1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JANET M. HEROLD
Regional Solicitor
DANIELLE L. JABERG (CSBN 256653)
Counsel for ERISA
NANCY E. STEFFAN (CSBN 280958)
Trial Attorney
Office of the Solicitor
UNITED STATES DEPARTMENT OF LABOR
90 7th Street, Suite 3-700
San Francisco, California 94103
Telephone: (415) 625-7744
Fax: (415) 625-7772

Attorneys for Plaintiff
United States Department of Labor

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS E. PEREZ,<br>　　Secretary of Labor,<br>　　United States Department of Labor,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SCOTT BRAIN, DAVID ALLEN, JAIME BARTON, FITZGERALD JACOBS, FRANK CROUCH, JESSE MENDEZ, MARCOS ENRIQUEZ, JAIME BRICENO, PHIL SALERNO, MAC TARROSA, BILLY LUJAN, ENRICO PRIETO, SCOTT BERG, LARRY NODLAND, the CEMENT MASONS SOUTHERN CALIFORNIA ADMINISTRATIVE CORPORATION, ZENITH AMERICAN SOLUTIONS, BILL LEE, the CEMENT MASONS SO. CAL. HEALTH AND WELFARE FUND TRUST, the CEMENT MASONS SO. CAL. PENSION TRUST, the ELEVEN COUNTIES CEMENT MASONS VACATION SAVINGS PLAN TRUST, the CEMENT MASONS JOINT APPRENTICESHIP TRUST, and the CEMENT MASONS SO. CAL. INDIV. RETIREMENT ACCOUNT DEFINED CONTRIBUTION TRUST,<br>　　　　　　　　　　Defendants. | Case No. CV 14-3911<br><br><br><br><br><br>COMPLAINT FOR VIOLATIONS OF ERISA |

Plaintiff Thomas E. Perez, Secretary of Labor, United States Department of Labor ("Secretary") alleges:

1.     This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1191c, and is brought by the Secretary under ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), to enjoin acts and practices that violate the provisions of Title I of ERISA; to obtain appropriate equitable relief for acts of discrimination under ERISA § 510, 29 U.S.C. § 1140, and for breaches of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104; and to obtain such further equitable relief as may be appropriate to redress and to enforce the provisions of Title I of ERISA.

## JURISDICTION & VENUE

2.     This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

3.     Venue of this action lies in the district court for the Central District of California, Western Division, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendants the Cement Masons So. Cal. Health and Welfare Trust Fund, the Cement Masons So. Cal Pension Trust, the Eleven Counties Cement Masons Vacation Savings Plan Trust, the Cement Masons Joint Apprenticeship Trust, and the Cement Masons So. Cal. Indiv. Retirement Account Defined Contribution Trust are adminis-

tered in Arcadia, California, within this district; the violations and breaches alleged took place in Arcadia, California, within this district; and each of the individual Defendants does business in Arcadia, California and can be found within this district.

## DEFENDANTS

### A. The Cement Masons Southern California Trust Funds

4.     Pursuant to collective bargaining agreements, the Cement Masons Local Unions 500 and 600 and four employer contractor associations established five employee benefit trust funds: the Cement Masons So. Cal. Health and Welfare Trust Fund, the Cement Masons So. Cal. Pension Trust, the Eleven Counties Cement Masons Vacation Savings Plan Trust, the Cement Masons Joint Apprenticeship Trust, and the Cement Masons So. Cal. Indiv. Retirement Account Defined Contribution Trust (collectively "Cement Masons Southern California Trust Funds" or "Trust Funds").

5.     Each of the five Trust Funds is an employee pension benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), which is subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

6.     Each of the Trust Funds is named as a Defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, solely to ensure that complete relief can be granted.

7.     Each of the Trust Funds is controlled and administered by a Board of Trustees comprised of trustees appointed by management and labor, respectively.  Pur-

suant to each Trust Fund's Trust Agreement, each Fund's Board of Trustees is permitted to coordinate the administration of the Trust Fund with the Boards of Trustees of other Trust Funds.  Pursuant to these provisions, trustees of the five Trust Funds formed a Joint Board of Trustees (hereinafter "JBT" or "Joint Board") comprised of trustees from each of the Trust Funds.

### B. Members of the Joint Board of Trustees

8.     At all relevant times, Defendant Scott Brain was the Business Manager of Cement Masons Local Union 600; a trustee of four of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); a member of the board of directors of the Cement Masons Southern California Administrative Corporation ("Corporation"); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

9.     At all relevant times, Defendant David Allen was a management trustee for each of the five Trust Funds; Chair of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); the president of the corporation; and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

10.     At all relevant times, Defendant Jaime Barton was the Business Manager of Cement Masons Local Union 500; a trustee of each of the five Trust Funds; a mem-

ber of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); the vice president of the Corporation; and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

11.    At all relevant times, Defendant Fitzgerald Jacobs was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

12.    At all relevant times, Defendant Frank Crouch was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

13.    At all relevant times, Defendant Jesse Mendez was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

14.     At all relevant times, Defendant Marcos Enriquez was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

15.     At all relevant times, Defendant Jaime Briceno was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

16.     At all relevant times, Defendant Phil Salerno was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

17.     At all relevant times, Defendant Mac Tarrosa was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

18.    At all relevant times, Defendant Billy Lujan was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

19.    At all relevant times, Defendant Enrico Prieto was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

20.    At all relevant times, Defendant Scott Berg was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

21.    At all relevant times, Defendant Larry Nodland was a trustee of one or more of the Trust Funds; a member of the Joint Board; a fiduciary of the Trust Funds within the meaning of ERISA §§ 3(21)(A)(i) and (iii), 29 U.S.C. §§ 1002(21)(A)(i) and (iii); and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

### C. Additional Defendants

22.     Defendant Cement Masons Southern California Administrative Corporation ("Corporation") was established by the Joint Board in 2007 to provide collections and auditing services for the Trust Funds.  The Corporation appeared to have no other purpose.  At all relevant times, the Corporation received all of its funding from the Trust Funds and was controlled by the Joint Board.  Until its dissolution in 2012, the Corporation was a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

23.     By about the end of December 2011, Defendant Zenith American Solutions ("Zenith") merged with American Benefit Plan Administrators ("ABPA"), taking Zenith's name.  For approximately fifty years though the current day, ABPA/Zenith has provided administrative services to the Trust Funds and, at all relevant times, its offices were located in the Trust Funds' building.[1]  Effective May 1, 2012, the Joint Board transferred collections and auditing functions from the Corporation to Zenith. Defendant Zenith is a successor of the Corporation and a "person" within the meaning of ERISA §§ 510 and 3(9), 29 U.S.C. §§ 1140 and 1002(9).

24.     At all relevant times, Defendant Bill Lee was the Administrator or Account Executive of the Trust Funds and an employee and agent of ABPA and, ulti-

---

[1] Zenith also conducts business for parties/entities other than the Trust Funds and has offices all throughout the United States.

**COMPLAINT FOR VIOLATIONS OF ERISA**                    **Page 8 of 25**

mately, Zenith.  Defendant Lee is a "person" within the meaning of ERISA §§ 510 and

3(9), 29 U.S.C. §§ 1140 and 1002(9).

## ALLEGATIONS

25.     Paragraphs 1-24 above are realleged and incorporated herein by reference.

### A. *Background on Cheryle Robbins's Employment with the Trust Funds*

26.     For approximately twenty years, Cheryle Robbins provided collections

and auditing services for the Trust Funds until her discharge on or about April 30,

2012.  Most recently, Robbins was employed by the Corporation as Director of its

Field Audit and Collections Department.  Without incident, Robbins held the position

of Director from 2007, when the Corporation was established to provide collections

and auditing services for the Trust Funds, until her discharge in 2012.  There were five

staff in Robbins' department, including herself.  Prior to 2007, Robbins provided iden-

tical services to the Trust Funds as an employee of ABPA.

27.     At all relevant times, Robbins participated in the Cement Masons So. Cal.

Health and Welfare Trust Fund, the Cement Masons So. Cal. Pension Trust and the

Cement Masons So. Cal. Indiv. Retirement Account Defined Contribution Trust.

28.     When the Corporation was established in 2007, Robbins and the other

ABPA employees who handled collections and auditing became employees of the

Corporation, but there was no change in their job duties or attendant responsibilities

following this transfer.

**COMPLAINT FOR VIOLATIONS OF ERISA**                                    **Page 9 of 25**

29.    In her capacity as Director of the Field Audit and Collections Department, Robbins and her staff were responsible for collecting contributions from employers who were delinquent in their required payments as well as auditing employers' records with regard to contributions due to the Trusts.

30.    Both ABPA/Zenith and the Corporation were located inside the Trust Funds' building in Arcadia, California.

31.    In providing third-party administrative services to the Trust Funds, ABPA/Zenith and its agent Bill Lee accepted direction from the Joint Board of Trustees and regularly sought counsel and advice from the Trust Funds' counsel.

**B. Robbins's Complaints About Violations of ERISA and Participation in the Department of Labor Investigation**

32.    For some period of time, Robbins had raised concerns about alleged improper practices by Defendant Brain, who was the Business Manager of Local 600, a member of the Joint Board, and a Trustee to four of the Trust Funds.  Robbins complained that Brain was engaged in various schemes to deprive the Trust Funds of contributions owed by employers which allowed some employers to underpay the Trust Funds.  Such alleged schemes, if true, give rise to violations under ERISA.  Additionally, such alleged schemes would also directly and adversely affect the three Cement Masons' sponsored plans in which Robbins participated (Cement Masons So. Cal.

Health and Welfare Trust Fund, the Cement Masons So. Cal. Pension Trust and the Cement Masons So. Cal. Indiv. Retirement Account Defined Contribution Trust).

33.    In or around October of 2011, Robbins, Defendant Allen, and an ABPA employee named Cory Rice made plans to send a letter to the President of the Cement Masons' International Executive Board, complaining of Brain's alleged improper conduct described in paragraph 32.  Such alleged conduct would give rise to violations under ERISA.

34.    Also in or around October 2011, Robbins received a telephone call from an investigator of the United States Department of Labor's ("DOL") Employee Benefits Security Administration ("EBSA") who advised Robbins that he was conducting an investigation of Brain.  The EBSA investigator requested certain information in connection with his investigation.  After receiving the call from EBSA, Robbins notified Kathy Halford, who, at that time, was serving as Collections Counsel for the Joint Delinquency Committee, a committee created by the JBT to oversee the collection efforts of the Field Audit and Collections Department, the same department over which Robbins was the Director.  Halford informed Robbins that Halford could not advise Robbins how to proceed because Halford represented Local 600 and therefore had a conflict.  Halford advised Robbins to obtain her own counsel.

35.     In October of 2011, Robbins informed Defendant Allen about the contact from the DOL.  Allen, in turn, informed Melissa Cook, who, at the time, was providing legal services to the Trust Funds.

36.     On or about November 10, 2011, Defendant Allen approached Defendant Lee and asked Lee to provide a bid by ABPA/Zenith to take over the Field Audit and Collections Department, providing four staff members, not the five the department currently had.  Upon information and belief, Defendant Allen made this request of Lee without the full Joint Board of Trustees' knowledge.

37.     On November 17, 2011, an EBSA investigator personally served a subpoena addressed to the Cement Masons Southern California Trust Funds, Audit Department, on Robbins.  Robbins immediately provided the subpoena to Halford and Cook.

38.     At all relevant times, Cook and Defendant Brain regularly engaged separately in private communications about the status of Trust Fund matters.  Cook did not have the same quantity of communications with the other trustees.

39.     For some period of time relevant to the events herein, Cook provided services to the Trust Funds, the Corporation, and the Joint Delinquency Committee while having a conflict of interest related to Defendant Brain which neither she nor Brain disclosed to the remainder of the trustees.  On information and belief, Defendant Brain

took no steps to inform the trustees of the Trust Funds, the Corporation and the Joint Delinquency Committee of Cook's conflict of interest, of which he was fully aware.

**C. Defendants' Decision to Place Robbins on Administrative Leave and Eventually Terminate Her Employment**

40.    On November 18, 2011, the day after the administrative subpoena was served on Robbins, and just several days after Cook spoke with Robbins about the DOL contact, the Joint Board met and voted to place Robbins on administrative leave. The meeting was attended by Cook and Defendants Allen, Brain, Barton, Jacobs, Crouch, Mendez, Enriquez, Briceno, Salerno, Tarrosa, Lujan, Prieto, Berg, and Nodland.  Prior to the vote, Cook reported to the trustees on Robbins' contact with the DOL.  Cook accused Robbins of improperly handing the DOL investigation because Robbins had not immediately advised Cook about the DOL contact, though the record is clear that Robbins previously advised Halford, the counsel who represented the Corporation's Field Audit and Collections Department.

41.    Also prior to the vote, at Defendant Brain's prompting, Defendant Allen advised the JBT that Robbins and Rice were engaged in efforts to write a letter to the President of the union's International Executive Board complaining about alleged improper conduct by Brain described in paragraph 32.  Such alleged conduct would give rise to violations under ERISA.

**COMPLAINT FOR VIOLATIONS OF ERISA**                                    **Page 13 of 25**

42.     Following discussions about the DOL contacting Robbins, Robbins' handling of that contact, Robbins' efforts to complain to the union's International Executive Board regarding alleged improper conduct by Brain (conduct that, if true, would violate ERISA), all of the trustees in attendance voted in favor of placing Robbins on "immediate paid administrative leave until such time as the matter pending before the DOL is resolved," except for Brain, who abstained from the vote.

43.     At all relevant times, there was no appropriate, substantive investigation into the substance of Robbins' allegations described in paragraph 32.

44.     Instead, upon placing Robbins on administrative leave, the trustees, Corporation and Cook set out to investigate Robbins herself and, specifically, whether she was attempting to take action against Defendant Brain by complaining to the President of the union's International Executive Board.

a.   Cook requested that Bond Beebe, an audit firm later engaged, as referenced *infra,* image Robbins' hard drive in an effort to discover whether Robbins had been sending and receiving email from certain parties, including the DOL, in connection with the complaints Robbins had been making against Brain.

b.   Cook also reviewed Robbins' cell phone records, which Defendant Lee provided her at her request, in an attempt to discover whom Robbins had been communicating with, including whether Robbins had been communicating with the DOL, in connection with Robbins' complaints against Brain.

c.  Also, upon information and belief, between the date that Cook learned of the DOL's communication with Robbins and the date of Robbins' termination, Cook also encouraged at least one trustee to direct his union staff not to cooperate with any investigation by the DOL.

45.    On or about November 2011, in an attempt to protect Brain and silence Robbins, Cook designed a set of audit procedures for an outside audit firm to implement in an examination of Robbins' department.  The procedures Cook created were specifically designed to get rid of Robbins.  The Joint Board and Joint Delinquency Committee later selected Bond Beebe for this audit engagement.

46.    While Robbins was on administrative leave, Defendant Lee told staff of ABPA/Zenith not to speak with Robbins or they would get in trouble.

47.    On December 3, 2011, Defendant Lee specifically described the events referenced herein to his supervisor via email as follows: "Cheryle Robbins, the Director of the Field, Audit and Collections Department, was placed on administrative leave at the November 18th meeting due in part to action she took with the DOL regarding Scott Brain.  In addition, the Trustees called for an outside audit of the [Field Audit and Collections] Department . . . .  I am sure Cheryle [Robbins] will be terminated once they have just cause with the audit.  If no reasons for termination are found in the out-

side audit, then her contact with the DOL regarding Scott Brain will be cause for termination."

48.     On or about January 9, 2012, Bond Beebe commenced its onsite examination of the procedures Cook designed.  Cook advised Bond Beebe that Robbins was out on administrative leave and would, therefore, be unavailable to interview in connection with its examination of Robbins' department.  Bond Beebe conferred with all Field Audit and Collections staff, with the exception of Robbins, as part of its examination.

49.     On or about January 10, 2012 and at times thereafter, Cook expressed her desire to Defendant Lee that Zenith provide all services, including field audit and collections services, to the Trust Funds.  Thereafter, Cook advised and counseled Defendant Lee on how to approach the Joint Board to win the business.

50.     On or about January 2012, Defendant Lee terminated Rice from ABPA's employment because of his participation in attempting to send a letter to the President of the Cement Masons' International Executive Board, complaining of Brain's alleged improper conduct described in paragraph 32.  Such alleged conduct, if true, would give rise to violations under ERISA.  Cook had knowledge of this termination prior to its execution by Lee.

51.     Also on or about January 2012, Lee terminated Louise Bansmer, Cory Rice's mother, from ABPA's employment because, inter alia, she continued to speak

to Robbins while she was on administrative leave.  Cook had knowledge of this termination prior to its execution by Lee.

52.    Before Bond Beebe reported to the Joint Board of Trustees about the results of its examination, on February 13, 2012, Defendant Zenith responded to an official request for proposal by the Joint Board to take over the field audit and collections work of the Corporation.

53.    Defendant Zenith's February 13, 2012 response or bid was based on the current salaries and benefits provided to the staff of the Corporation, including Robbins.

54.    In response to Defendant Allen's request that Defendant Zenith "sharpen its pencil," on March 27, 2012, before Bond Beebe reported to the Joint Board of Trustees about the results of its examination, Zenith provided a revised bid, which was lower than its February 13, 2012 bid.  As part of this bid, Defendant Lee was asked to assume oversight over the staff in the Field Audit and Collections Department, thus eliminating Robbins' position.  No other firm was asked to or was provided the opportunity to submit a revised bid.

55.    On April 12, 2012, Bond Beebe issued its Cement Masons Southern California Joint Delinquency Committee Report on Applying Agreed Upon Procedures.  Such report was issued without speaking to or conferring with Robbins, the Director of the Department.  The report identified deficiencies in the department.

56.     After presenting the report's findings in-person at a JBT meeting held on April 12, 2012, the Joint Board voted to transfer the Corporation's collections and auditing services to Defendant Zenith, when feasible.  Thereafter, on April 23, 2012, the Board of Directors of the Corporation (Allen, Barton, Brain, Mendez, Nodland and Salerno) met and voted to dissolve the Corporation effective April 30, 2012, terminating all employees, including Robbins, from the Corporation.

57.     By letter dated April 30, 2012, Robbins was informed that her employment with the Corporation was terminated.  On or about May 1, 2012, each of Robbins' staff from the Field Audit and Collections Department at the Corporation was hired to perform auditing and collections services for Zenith.  Robbins, however, was not offered a position with Defendant Zenith.

58.     When the field audit and collections work was transferred to Defendant Zenith, all employees of the Corporation, except for Robbins, became employees of Defendant Zenith, but there was no significant change in their job duties or attendant responsibilities following this transfer.

59.     None of the Defendants provided Robbins with any explanation as to why Robbins, unlike her former staff, was not hired by Defendant Zenith. However, some of Robbins' former staff reported that Defendant Lee advised them that the trustees would not allow Zenith to hire Robbins.

60.     On or around September of 2012, Robbins brought a lawsuit in California state court alleging several claims for wrongful discharge against the Corporation, the Trust Funds, Zenith, trustees Scott Brain, David Allen, Jaime Barton, Phil Salerno, Jesse Mendez, Larry Nodland and Does 1 to 100.  Later, Robbins dismissed without prejudice all parties from her lawsuit with the exception of the Corporation.  On or around January 2014, the Joint Board of Trustees voted to fund $287,500 of Trust Funds money to settle Robbins' claims against Defendant Corporation.

### VIOLATIONS OF ERISA

61.     By the conduct described in paragraphs 25-44 above, in causing Robbins to be placed on paid administrative leave because of her complaints regarding alleged improper conduct by Brain, which complaints, if true give rise to violations under ERISA, and for Robbins' participation in a DOL investigation, Defendants Allen, Barton, Brain, Jacobs, Crouch, Mendez, Enriquez, Briceno, Salerno, Tarrosa, Lujan, Prieto, Berg, Nodland and the Corporation, acting in concert and/or as co-conspirators, violated ERISA § 510, 29 U.S.C. § 1140.

62.     As a direct and proximate result of the actions of Defendants Allen, Barton, Brain, Jacobs, Crouch, Mendez, Enriquez, Briceno, Salerno, Tarrosa, Lujan, Prieto, Berg, Nodland and the Corporation in placing Robbins on administrative leave, Robbins has suffered harm from the stigma of this adverse action, and Defendants have chilled the exercise of protected rights by sending the message that employees will be

subject to adverse action for speaking to the Department of Labor or complaining about perceived violations of ERISA, for which Defendants Allen, Barton, Brain, Jacobs, Crouch, Mendez, Enriquez, Briceno, Salerno, Tarrosa, Lujan, Prieto, Berg, Nodland and the Corporation are jointly and severally liable.

63.     By the conduct described in paragraphs 45-59 above, in failing to rehire Robbins following the transfer of collection and audit services from the Corporation to Zenith because of her complaints regarding alleged improper conduct by Brain, which complaints, if true give rise to violations under ERISA, and for Robbins' participation in a DOL investigation, Defendants Zenith and Lee violated ERISA § 510, 29 U.S.C. § 1140.

64.     By the conduct described in paragraphs 45-59 above, by acting in concert and/or as co-conspirators with Defendants Zenith and Lee to effect the removal of Robbins from her employment from the Corporation and to prevent her from performing any services or work for the Trust Funds because of her complaints regarding alleged improper conduct by Brain, which complaints, if true give rise to violations under ERISA, and for Robbins' participation in a DOL investigation, Defendants Brain and Allen violated, ERISA § 510, 29 U.S.C. § 1140.

65.     As a direct and proximate result of the violations identified in paragraphs 63-64, Robbins has suffered the loss of her employment and lost earnings and employ-

ee benefits, for which Defendants Zenith, Lee, Brain, and Allen are jointly and severally liable.

66.    As a direct and proximate result of the violations identified in paragraphs 63-64 and as a direct and proximate result from terminating Cory Rice and Louise Bansmer for their involvement in attempting to make complaints protected by ERISA and/or for their association with Robbins, Defendants have chilled the exercise of protected rights by sending the message that employees will be subject to adverse action for speaking to the Department of Labor or complaining about perceived violations of ERISA, for which Defendants are jointly and severally liable.

67.    By the conduct described in paragraphs 25-60 above, Defendants Allen, Brain, Barton, Jacobs, Crouch, Mendez, Enriquez, Briceno, Salerno, Tarrosa, Lujan, Prieto, Berg, and Nodland, in their fiduciary capacities failed to act solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of Plan administration and failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims in violation of ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B), when they:

a.  Failed to undertake an investigation into Robbins' allegations that Brain was helping employers underpay their contributions to the Trust Funds, conduct which, if true, gives rise to violations of ERISA;

b.  Voted to use Trust Fund assets to finance a settlement of Robbins' wrongful discharge claims to redress unlawful discrimination they committed; and

c.  Placed Robbins on paid administrative leave because of her complaints regarding alleged improper conduct by Brain which complaints, if true give rise to violations under ERISA, and for Robbins' participation in a DOL investigation.

68.     Defendants Brain, Allen, Barton, Jacobs, Crouch, Mendez, Enriquez, Briceno, Salerno, Tarrosa, Lujan, Prieto, Berg and Nodland are liable as a co-fiduciaries pursuant to ERISA § 405(a), 29 U.S.C. § 1105(a), for the violations identified in paragraph 66 because: (1) they knowingly participated in, or knowingly undertook to conceal, acts or omissions by the fiduciary Defendants named in paragraph 66; (2) they enabled the fiduciary Defendants named in paragraph 66 to commit such breaches by their failure to comply with ERISA § 404(a)(1)(A) & (B).

69.     As a direct and proximate result of the breaches and violations set forth in paragraphs 61, 63-64 and 67 above, the Secretary is entitled to such equitable or remedial relief as the Court may deem appropriate, including reinstatement of Robbins, restoring wages that would have been paid as part and parcel of make whole restitution, compensation of Robbins for other consequential damages resulting from her place-

ment on administrative leave and termination, including interest and employee bene-

fits, training for all Zenith employees on their rights under ERISA § 510 in order to

erase any chilling effect that Robbins' termination may have had on employees' exer-

cise of their ERISA-protected rights, removal of Defendants as trustees to the Trust

Funds, and permanently enjoining Defendant trustees from serving as a fiduciary of

any ERISA-covered plan, pursuant to ERISA § 409, 29 U.S.C. § 1109.

## **PRAYER FOR RELIEF**

WHEREFORE, the Secretary prays for judgment:

A.   Ordering Defendant Zenith to immediately reinstate Robbins to a position with

Zenith that is equivalent, in both remuneration and responsibilities, to the posi-

tion of Director of the Field Audit and Collections Department which Robbins

held with the Corporation prior to November 18, 2011;

B.   Ordering Defendants Brain, Allen, Lee, and Zenith to compensate Robbins for

lost wages, with interest, from the date of her termination until the date of rein-

statement, with Defendants Brain, Allen, Lee, and Zenith being jointly and sev-

erally liable for the full amount of lost wages and interest;

C.   Ordering Defendants to compensate Robbins for any additional expenses that

she incurred as a result of being placed on administrative leave and subsequently

terminated, including employee benefits that Robbins would have received but for Defendants' unlawful discrimination;

D.   Ordering Defendants to provide comprehensive training to all affected employees and trustees on participants' and employees' rights under ERISA, with a focus on employees' rights under ERISA § 510 to provide information to the Department of Labor and to voice complaints about perceived violations of ERISA without fear of retaliation of any kind;

E.   Ordering Defendants to provide fiduciary education/training to all trustees appointed to the Trust Funds;

F.   Permanently enjoining Defendants from violating the provisions of Title I of ERISA;

G.   Removing Defendants Brain, Allen, Barton, Jacobs, Crouch, Mendez, Enriquez, Briceno, Salerno, Tarrosa, Lujan, Prieto, Berg, and Nodland as trustees and permanently enjoining each of them from serving as a fiduciary of any ERISA-covered plan;

H.   Removing Defendant Bill Lee from any position he holds as a fiduciary or service provider to an ERISA-covered plan and permanently enjoining him from serving as a fiduciary or service provider to any ERISA-covered plan.

I.   Awarding the Secretary the costs of pursuing this action; and

Ordering such further relief as the Court deems to be appropriate and just.

M. PATRICIA SMITH
Solicitor of Labor

JANET M. HEROLD
Regional Solicitor

DANIELLE L. JABERG
Counsel for ERISA

Dated: May 21, 2014

/s/ Nancy E. Steffan

NANCY E. STEFFAN
Trial Attorney
Attorneys for the Secretary